UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CANDICE MARTIN,

                Plaintiff,

    v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 2:16-cv-01891-RSM-TLF

REPORT AND RECOMMENDATION

Noted for November 24, 2017

Candice Martin has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court reverse the Commissioner's decision to deny benefits and remand this matter for an award of benefits.

I. Background

Ms. Martin filed an application for SSI benefits on January 29, 2014, alleging that she became disabled beginning May 1, 2004. Dkt. 12, Administrative Record (AR) 12. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on May 5, 2015. AR 282-309. Ms. Martin and a vocational expert appeared and testified. Ms. Martin amended the date of onset at the hearing,

REPORT AND RECOMMENDATION - 1

because the application was solely for SSI benefits; the amended date of onset was January 29, 2014. AR 285.[1]

The ALJ found that Ms. Martin could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 12-22 (ALJ decision dated 9-17-2015). The Appeals Council denied Ms. Martin's request for review on October 6, 2016, making the ALJ's decision the final decision of the Commissioner. AR 5. Ms. Martin appealed that decision in a complaint filed with this Court on December 14, 2016. Dkt. 3; 20 C.F.R. § 416.1481.

Ms. Martin seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence. Ms. Martin contends that the ALJ erred in rejecting medical opinion evidence and consequently in assessing her residual functional capacity (RFC) and finding her not disabled at step five of the sequential evaluation process. Specifically, Ms. Martin contends that the ALJ erroneously rejected the findings of Anselm A. Parlatore, M.D., an examining physician. In Dr. Parlatore's examination and opinion, he found that Ms. Martin's mental condition was a severely limiting disability. Dkt. 13, p. 2. For the reasons set forth below, the undersigned agrees that the ALJ erred as alleged. Consequently, the undersigned recommends that the decision to deny benefits be reversed. Because the record is fully developed and further administrative proceedings would not be useful, the undersigned recommends that the Court direct an award of benefits on remand.

---

[1] SSI benefits are based on whether a claimant is "aged, blind or disabled", and whether the claimant has income and resources that fall below certain thresholds. 42 U.S.C. §1382(a). This is different from Social Security Disability Income benefits (SSDI). SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSI and SSDI. *Diedrich v. Berryhill,* No. 14-36070, slip op. at 5 (9th Cir. Oct. 26, 2017).

REPORT AND RECOMMENDATION - 2

## II. Standard of Review and Scope of Review

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations, (4) If not, can the claimant perform relevant work that he or she has done in the past? And, (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless can perform? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011). If the ALJ finds at step three that the claimant's impairments do not meet the listed criteria for disability, then before reaching steps four and five the ALJ must determine the claimant's RFC—that is, what kind of work the claimant can do despite his or her impairments. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* No. 15-16477, slip op. at 7 (9th Cir. Oct. 26, 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one

rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. The ALJ's Consideration of the Medical Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence."

REPORT AND RECOMMENDATION - 4

*Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the un-contradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels,* No. 15-16477, slip op. at 9. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* The ALJ must explain the "specific and legitimate reasons" by: (1) summarizing detailed facts describing the conflicting clinical evidence; (2) making a statement of about the ALJ's interpretation of the operative facts on which the ALJ bases his or her reasons; and (3) making specific findings about why the interpreted facts provide support for the reasons. *Id.* at 9, 15-20, 26-30. In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater,* 81 F.3d at 831.

A.  <u>The ALJ's Determinations at Steps Three, Four, and Five</u>

At step three of the five-step "sequential evaluation process," the ALJ determined that Ms. Martin does not have an impairment or combination of impairments that meets the criteria of an impairment listed in the regulations. AR 15; see 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Ms. Martin does not challenge this determination. Dkt. 13.

REPORT AND RECOMMENDATION - 5

Before determining at steps four and five whether Ms. Martin is disabled, the ALJ performed a more detailed assessment of the medical evidence to arrive at Ms. Martin's RFC. The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." Id. The ALJ based her assessment of Ms. Martin's RFC on an examination of the medical evidence, and in part on her rejection of Dr. Parlatore's opinion that Ms. Martin's mental health symptoms would markedly limit her ability to perform functions necessary to hold a job. AR 16-20.

The ALJ determined at step four that Ms. Martin had no past relevant work with which to compare her RFC. AR 21.

The vocational expert testified that a person with Ms. Martin's RFC could work as a landscape laborer, laundry worker, or small-parts assembler. AR 305-06. Based on that testimony, the ALJ found Ms. Martin not disabled at step five. AR 21-22.

B.   Dr. Parlatore's Examining Opinion

Dr. Parlatore performed a psychiatric examination of Ms. Martin in May 2014. AR 216. In doing so he reviewed Ms. Martin's medical record (noting in particular Dr. Holly Petaja's July 2013 DSHS evaluation), interviewed Ms. Martin and her husband, and performed a mental status exam. AR 216-18. He described the history of Ms. Martin's depression and anxiety and summarized her social, family, medical, and psychiatric history. AR 216-18.

Dr. Parlatore opined that Ms. Martin's "social interaction and adaptation are markedly and severely affected by her symptoms." AR 219. He wrote that Ms. Martin "can only do simple repetitive domestic chores but cannot function with peers, supervisors or the general public." AR

REPORT AND RECOMMENDATION - 6

29. He further opined that Ms. Martin "cannot perform activities within a schedule or maintain regular attendance or be punctual to a marked degree. She cannot communicate and preform [sic] effectively in a work setting nor complete a normal workday or workweek without interruption from her psychiatric base symptoms to a marked degree." And, he found, Ms. Martin "cannot maintain appropriate behavior in the work setting to a marked degree."

Finally, Dr. Parlatore found "no evidence of feigning or factitious behavior. . . . She appeared to answer in an open and honest way and there did not appear to be any evidence of the claimant exaggerating symptoms" or "any inconsistencies throughout the evaluation." AR 219. In his mental status exam, Dr. Parlatore noted that Ms. Martin "was tearful," "seemed overwhelmed and haggard," and "was fearful and timid," showing "tenseness and anxiety and nervousness." He observed that Ms. Martin's "mood was one of tenseness and anxiety and sadness and her affect was constricted." He also found her to be "cogent, coherent, lucid and logical and oriented," that she "denied suicidal ideation," and that "[t]here was no evidence of psychosis, hallucinations, paranoia, or delusions." AR 218. In a cognitive exam, he found mostly normal results, concluding that Ms. Martin's reasoning, understanding, memory, concentration, pace, and persistence were unremarkable. AR 218-19.

C.     <u>The ALJ Erroneously Rejected Dr. Parlatore's Opinion, and the Error is not Harmless</u>

The ALJ gave Dr. Parlatore's opinion "little weight." AR 20. She explained that Dr. Parlatore based his opinion "primarily on [Ms. Martin's] self-reports, which are not credible." AR 20. In support of this reasoning, the ALJ made two subsidiary findings: that Ms. Martin's statements to Dr. Parlatore were not credible and that Dr. Parlatore's objective observations did not support his opinion. AR 20; *see* AR 17-19.

REPORT AND RECOMMENDATION - 7

The ALJ's analysis was not legally sufficient. First, the record does not support the ALJ's finding that Dr. Parlatore relied primarily on Ms. Martin's self-reports. "The rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the Ninth Circuit held that the ALJ erred in rejecting an examining psychiatrist's opinion as based on the claimant's self-reports. *Id.* While the court acknowledged that the psychiatrist based his opinion "in part on Buck's self-report that he had trouble keeping a job," it observed that the psychiatrist "also conducted a clinical interview and a mental status evaluation." *Id.* The court held that "[t]hese are objective measures and cannot be discounted as a 'self-report.'" *Id.*; *see also Lubin v. Commissioner of Social Sec. Admin.,* 507 Fed. Appx. 709, 712 (9th Cir. 2013) (an examining physician's medical opinion is given more weight than brief observations by non-treating, non-examining disability investigators).

The ALJ similarly erred here in rejecting Dr. Parlatore's evaluation as based on entirely on "self-reports." Like the psychiatrist in *Buck*, Dr. Parlatore conducted a clinical interview and mental status examination. AR 216-18. He necessarily interpreted his findings from those objective measures in reaching an opinion on Ms. Martin's functional limitations. *See* AR 219. The ALJ thus had no basis for her finding that "[n]othing in [Dr. Parlatore's] report, other than the claimant's reports of the severity of her symptoms, explains these limitations." *See* AR 20.

Second, even if Dr. Parlatore relied primarily on Ms. Martin's self-reports, the ALJ did not offer valid reasons to discredit Ms. Martin's subjective statements. Absent evidence of malingering, the ALJ was required to give clear and convincing reasons to reject Ms. Martin's subjective statements as non-credible. *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995).

The Commissioner contends that Ms. Martin fails to raise this issue because she did not separately challenge the ALJ's credibility determination. The Commissioner is correct that a claimant can waive her challenge to a credibility determination by failing to raise it. *See Hughes v. Astrue*, 357 Fed. App'x 864, 866 (9th Cir. 2009) (holding failure to challenge ALJ's credibility finding in District Court waives challenge to that finding on appeal). But the ALJ based her finding that Ms. Martin's statements to Dr. Parlatore were not credible on her prior determination that Ms. Martin's statements at the hearing and throughout the record are not credible. Ms. Martin does not claim the ALJ erred in evaluating her subjective testimony as a separate basis for reversal. Instead, she contends that the record does not support the ALJ's finding that her statements *to Dr. Parlatore* were not credible.[2] Thus, Ms. Martin effectively raised the credibility issue within her challenge to the ALJ's rejection of Dr. Parlatore's opinion. *See* Dkt. 13, p. 9.

Moreover, this Court has an independent burden to determine whether or not "the Commissioner's decision is: (1) free of legal error and (2) is supported by substantial evidence.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *see also United States v. Levy*, 391 F.3d 1327, 1335 (11th Cir. 2004) ("The issue is not whether this Court has the power to consider issues not raised in the initial brief; of course it does."). The undersigned therefore addresses the ALJ's determination that Ms. Martin's self-reports were not credible.

---

[2] Ms. Martin contends "[t]here is no evidence that [she] made inconsistent reports deliberately" or "misrepresented any fact to Dr. Parlatore, only that a single report to him regarding her relatively remote history of substance abuse (not current use) was inconsistent with another report." She asserts that, instead, her "reports regarding her [substance abuse] history . . . were consistent throughout the record." Dkt. 13, p. 9.

REPORT AND RECOMMENDATION - 9

Since the ALJ's ruling in this case, the Social Security Administration issued a ruling to "'eliminat[e] the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term' and to 'clarify that subjective symptom evaluation is not an examination of an individual's character' but instead was meant to be consistent with 'our regulatory language regarding symptom evaluation.'" *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16–3p (2016)). As the Ninth Circuit recently explained, the new

> ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," *and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness*.

*Id.* (emphasis added).

Under this rule, the ALJ's determinations concerning Ms. Martin's credibility were—even if supported—an invalid basis on which to reject her testimony about her mental-health symptoms. *See Trevizo*, 871 F.3d at 678 n.5. For example, the ALJ inferred that Ms. Martin "did not tell Dr. Parlatore the whole truth" because "there is more to the claimant's substance abuse history than reflected in Dr. Parlatore's report." AR 20. That report stated that Ms. Martin had been "clean and sober" for three years, or since 2011. AR 216-17. Various providers' notes on Ms. Martin's methamphetamine use placed the date when she stopped sometime between 2011 and 2013. *See* AR 236, 243, 267, 277. None of those records purport to give a date with any specificity, however.

Similarly, the ALJ also found that Ms. Martin made inconsistent reports of where she lived in the two years before the hearing. AR 17. It is not clear that Ms. Martin's different statements are actually inconsistent. It is clear only that her living situation was chaotic: She was homeless and couch surfing in January 2014. AR 242. Four months later she was living with her

REPORT AND RECOMMENDATION - 10

husband and his sister and nephew. AR 216. At the May 2015 hearing she estimated—with obvious difficulty—that she had been living in Marysville for eight months, and that when she filed her application she was homeless and using a mailing address in Woodinville. AR 287. Before Woodinville, she lived in Bellingham. AR 287. At different times in that period, she reported to mental-health providers that she was homeless, that she was living with a friend because of domestic violence in her marriage, and that she had moved back in with her husband. AR 228, 235. She said at the hearing that she was living with three other roommates, with and then without her husband. AR 290-92. The ALJ could not reasonably infer from this disarray in Ms. Martin's living situation that her statements are generally not credible.

More importantly, the ALJ offers no explanation of how any inconsistencies in the end-date of Ms. Martin's drug use or in her accounts of her living situation would affect the weight of her statements about her anxiety and depression. Instead, the ALJ's treatment of these issues was part of an impermissible, "wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5. And because the ALJ's reasons for rejecting Ms. Martin's testimony as non-credible were not clear and convincing, the ALJ erred in rejecting Dr. Parlatore's opinion on that basis.

Consequently, the ALJ failed to accurately consider the medical evidence in deciding whether Ms. Martin's RFC would allow her to find gainful employment. The ALJ found Ms. Martin had the RFC

> **to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, and carry out routine and repetitive tasks. She is able to follow goals and routines set out by others. The claimant should not work with the public and can have occasional contact with co-workers and supervisors. She needs a routine and predictable work environment.**

AR 16 (emphasis in original).

REPORT AND RECOMMENDATION - 11

As discussed above, the undersigned agrees with Ms. Martin that the ALJ's assessment of Ms. Martin's RFC and the ALJ's resulting decision at step five are erroneous as a matter of law because the ALJ based step five on an erroneous assessment of the medical opinion evidence.

At step five, the ALJ must identify specific jobs that exist in substantial numbers in the national economy – and only those specific jobs that a claimant would be able to perform in spite of the identified limitations. *Zavalin v. Colvin,* 778 F.3d 842, 845 (9th Cir. 2015). The ALJ does this by completing the following analysis: (1) Assessing the claimant's functional capacity – the most the claimant would be able to do under the circumstances of his or her physical and mental limitations that are caused by impairments and related symptoms; and (2) considering potential occupations (including information provided in the Dictionary of Occupational Titles, and by the testimony of vocational expert(s)) the claimant might be able to perform; (3) the ALJ then determines "whether, given the claimant's [RFC], age, education, and work experience, he [or she] actually can find some work in the national economy." *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir. 2009). An RFC is defective if the ALJ fails to include all the limitations of a particular claimant; if the ALJ relies on hypotheticals that are discussed by the vocational expert, the hypothetical must take into account all the limitations and restrictions experienced by the claimant. *Valentine,* at 690.

Because the ALJ erred in addressing Dr. Parlatore's opinion, the RFC did not completely and accurately describe Ms. Martin's limitations. Therefore, the ALJ failed to identify substantial evidence for the decision at steps four and five that Ms. Martin was not disabled.

IV. Remand for Award of Benefits

The Court is authorized to reverse with or without a remand. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The district court has discretion to reverse and

REPORT AND RECOMMENDATION - 12

remand for an award of benefits without a rehearing and to credit evidence that was rejected by the ALJ. 42 U.S.C. § 405(g); *Garrison*, 759 F.3d at 1020-21. A reversal and remand for award of benefits is appropriate if the ALJ failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and the record is clear that if the rejected evidence is taken into consideration there should be a finding of disability. *Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014); *Revels*, No. 15-16477, slip op. at 15. However, if the court determines that the record as a whole creates a serious doubt as to whether the claimant is disabled within the meaning of the Social Security Act, then the court should remand for further proceedings. *Burrell*, 775 F.3d at 1141.

The credit-as-true factors are satisfied here. There is no dispute that the record is fully developed. As discussed above, the ALJ failed to provide sufficient reasons to reject Dr. Parlatore's medical opinion. And if Dr. Parlatore's improperly discredited opinion were credited as true—including Ms. Martin's "inability perform activities within a schedule or maintain regular attendance or be punctual to a marked degree" and inability to work without interruption from psychiatric symptoms—the ALJ would be required to find Ms. Martin disabled on remand. Demonstrating this, the vocational expert testified that a claimant who would miss work twice per month, be unable to arrive at work on time, require additional breaks, or have multiple angry outbursts would be unable to maintain employment. AR 306-09. Therefore, the Court should remand for the Commissioner to calculate and award benefits. *See Revels*, No. 15-16477, slip op. at 15.

REPORT AND RECOMMENDATION - 13

## CONCLUSION

The undersigned recommends that the Court find the ALJ improperly determined Ms. Martin to be not disabled, and therefore that the Court reverse the ALJ's decision and remand this matter for an award of benefits.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **November 24, 2017**, as noted in the caption.

DATED this 3rd day of November, 2017.

Theresa L. Fricke
United States Magistrate Judge